**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Kim D Abramson,

Plaintiff,

v.

Commissioner of Social Security Administration,

Defendant.

No. CV-19-00362-TUC-RM (DTF)

**ORDER**

Plaintiff seeks judicial review of a partially favorable final decision of the Commissioner of Social Security ("Commissioner"). (Doc. 1; *see also* Doc. 16.) Magistrate Judge D. Thomas Ferraro issued a Report and Recommendation ("R&R"), recommending that this Court reverse the Commissioner's decision and remand to the agency for further proceedings. (Doc. 19.) The Commissioner filed an Objection. (Doc. 20.) For the following reasons, the Objection will be overruled and the R&R will be adopted in part.

**I. Background**

Plaintiff protectively filed an application for disability insurance benefits and supplemental security income on or about November 2, 2017, alleging a disability onset date of December 31, 2012, her date last insured. (*See* AR 70, 169, 301-15.) After the application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 193-203.) On August 9, 2018, ALJ Laura Speck Havens held a hearing at which Plaintiff testified. (AR 113-47.) At the

hearing, Plaintiff amended her alleged disability onset date to July 1, 2012. (AR 116.) After the hearing, the ALJ issued a decision finding that Plaintiff became disabled on November 2, 2017 but was not disabled prior to that date or at any time through her date last insured. (AR 168-80.) After the Appeals Council granted review and remanded (AR 189-91), the ALJ held an additional hearing at which Plaintiff, medical expert Dr. Maria Rivero, and vocational expert Robin Genaro testified (AR 67-112). The ALJ issued a subsequent decision on February 12, 2019, in which she again found that Plaintiff has been disabled since November 2, 2017 but was not disabled prior to that date or at any time through her date last insured. (AR 40-58.) The Appeals Council denied review, making the February 12, 2019 decision the final decision of the Commissioner. (AR 1-3.) On July 7, 2019, Plaintiff filed a Complaint seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). (Doc. 1.) Plaintiff then filed an Opening Brief (Doc. 16), the Commissioner filed a Response (Doc. 17), and Plaintiff filed a Reply (Doc. 18).

Only the unfavorable portion of the ALJ's decision is at issue in this litigation. The ALJ followed the five-step sequential evaluation process set forth in the Social Security regulations for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). At the first step, the ALJ noted that there is evidence in the record indicating that Plaintiff may have engaged in work activity since her amended alleged disability onset date of July 1, 2012. (AR 45.) However, the ALJ found it unnecessary "to determine whether that work activity constitutes disqualifying substantial gainful activity because there exists a valid basis on other grounds for denying her claim until her protective filing date." (AR 45-46.) At the second step, the ALJ found that, as of her alleged disability onset date, Plaintiff had, as severe impairments, post laminectomy syndrome, right shoulder dysfunction, chronic fatigue syndrome, migraine headaches, obesity and sinusitis. (AR 46.) At step three, the ALJ found that Plaintiff has not had an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 47.)

At step four, the ALJ found that, prior to November 2, 2017, Plaintiff had the residual functional capacity to perform sedentary work with the following limitations: Plaintiff could lift/carry/push/pull ten pounds occasionally and ten pounds frequently; Plaintiff could sit for six hours, stand for two hours, or walk for two hours, per eight-hour workday; Plaintiff could not climb ladders/ropes/scaffolds, kneel, crouch, or crawl; Plaintiff could occasionally climb stairs, bend, stoop, or overhead reach with her right dominant upper extremity; and Plaintiff could have occasional exposure to temperature, dust, fumes, and smoke. (AR 47.) Based on this residual functional capacity finding, the ALJ concluded that Plaintiff was capable of performing her past relevant work prior to November 2, 2017. (AR 55.) The ALJ also found in the alternative at step five that other jobs existed in significant numbers in the national economy that Plaintiff could perform prior to that date. (AR 55-56.)

In determining that Plaintiff was not disabled prior to her protective filing date, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms" but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. . . ." (AR 49-50.) The ALJ also purported to give reduced weight to—and as a practical matter rejected—the opinions of Drs. Karen Herbst, Peggy Avina, and Maria Rivero that Plaintiff did not have the residual functional capacity to sustain full-time work as of her date last insured.[1]

Plaintiff challenges the ALJ's treatment of the opinions of Drs. Herbst, Rivero, and Avina, and the ALJ's determination that she was not disabled prior to her date last insured. (Docs. 1, 16.) Magistrate Judge Ferraro's R&R finds no error in the weight that the ALJ assigned to Dr. Herbst's opinion, but it finds reversible error in the ALJ's analysis of the opinions of Drs. Avila and Rivero. (Doc. 19 at 10-18.)[2] The R&R also

[1] Drs. Herbst and Avina directly opined that Plaintiff could not sustain full-time work as of 2009-2010. (AR 1093-94; AR 1254.) Dr. Rivero testified that Plaintiff would be off-task over ten percent of the time as of her date last insured (AR 105), and the vocational expert testified that a person who is off task over ten percent of the time cannot sustain full-time work (AR 111).

[2] Record citations refer to the page numbers generated by the Court's electronic filing

finds that the ALJ erred by failing to render a conclusive determination at step one. (*Id.* at 12-13, 18.) The R&R recommends that the ALJ's decision be reversed and that the matter be remanded to the agency for a conclusive step one decision and re-evaluation of the medical opinions of Drs. Avina and Rivero. (*Id.* at 13, 19-20.)

The Commissioner filed an Objection to the R&R (Doc. 20), and Plaintiff responded to the Objection (Doc. 21). The Commissioner argues that substantial evidence supports the ALJ's evaluation of the opinions of Drs. Avina and Rivero, and that any error in the ALJ's failure to make a conclusive step one determination was harmless. (Doc. 20.) Plaintiff argues that the R&R correctly finds reversible error in the ALJ's treatment of the opinions of Drs. Avina and Rivero, but that remand for a conclusive step one determination is inappropriate. (Doc. 21.)

## II. Standard of Review

A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations" made by a magistrate judge. 28 U.S.C. § 636(b)(1). The district judge must "make a de novo determination of those portions" of the magistrate judge's "report or specified proposed findings or recommendations to which objection is made." *Id.* The advisory committee's notes to Rule 72(b) of the Federal Rules of Civil Procedure state that, "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" of a magistrate judge. Fed. R. Civ. P. 72(b) advisory committee's note to 1983 addition. *See also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error."); *Prior v. Ryan*, CV 10-225-TUC-RCC, 2012 WL 1344286, at *1 (D. Ariz. Apr. 18, 2012) (reviewing for clear error unobjected-to portions of Report and Recommendation).

The Court must affirm the Commissioner's decision if the decision "is supported by substantial evidence and based on the application of correct legal standards."

---

system.

*Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (per curiam). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). It "is more than a mere scintilla but less than a preponderance." *Id.* In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "weigh both the evidence that supports and the evidence that detracts from the ALJ's factual conclusions." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation omitted). When evidence "is susceptible to more than one rational interpretation, one of which supports the ALJ's decision," this Court must uphold the ALJ's conclusion. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Court may consider "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [she] did not rely." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (internal quotation omitted).

Error in a social security determination is subject to harmless-error analysis. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). "[A]n error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (internal quotation omitted), *superseded by regulation on other grounds*. The Court must "look at the record as a whole to determine whether the error alters the outcome of the case." *Id.* An error that is "inconsequential to the ultimate nondisability determination" is harmless. *Id.* (internal quotation omitted).

## III. Discussion

At the first step of the five-step sequential evaluation process, the ALJ must determine if a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At the second step, the ALJ must determine whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted or is expected to last for a continuous period of at least 12 months; if not, the claimant is not disabled. 20

C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); *see also* 20 C.F.R. §§ 404.1509, 416.909. At the third step, the ALJ must determine if the claimant's impairment(s) meets or equals that of a listed impairment; if so, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At the fourth step, the ALJ must determine whether, based on the claimant's residual functional capacity, the claimant can perform his or her past relevant work; if so, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At the fifth step, the ALJ must determine whether, based on the claimant's residual functional capacity, age, education, and work experience, the claimant can make an adjustment to other work; if so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(v), 416.920(a)(4)(v).

A claimant's statements about her pain or other symptoms will not alone establish disability; "[t]here must be objective medical evidence from an acceptable medical source that shows" the claimant has a medical impairment or impairments that "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. § 404.1529(a). The existence of such an impairment must be shown by "[m]edical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques . . . ." *Id.* § 404.1529(b). But once a claimant has shown that she has a medically determinable impairment or impairments that could reasonably be expected to produce her pain or other symptoms, her "statements about the intensity and persistence" of her pain or other symptoms cannot be rejected "solely because the available objective medical evidence does not substantiate" them. 20 C.F.R. § 404.1529(c)(2).

In evaluating the intensity and persistence of a claimant's symptoms, an ALJ must consider all the available evidence from the claimant's "medical sources and nonmedical sources about how [the claimant's] symptoms affect [her]." *Id.* § 404.1529(c)(1). For claims filed on or after March 27, 2017, medical opinions must be evaluated pursuant to 20 C.F.R. § 404.1520c(c) based on factors including supportability, consistency, relationship with the claimant, and specialization. Medical opinions are more persuasive

if they are supported by explanations and objective medical evidence, 20 C.F.R. § 404.1520c(c)(1), and if they are consistent with the evidence from other medical and nonmedical sources, *id.* § 404.1520c(c)(2). Furthermore, the medical opinion of a specialist "about medical issues related to his or her area of specialty" is more persuasive than that of a non-specialist. *Id.* § 404.1520c(c)(4). The purpose, length, and extent of a medical source's treatment relationship with the claimant, the kinds and extent of examinations and testing performed, and the frequency of the claimant's visits, may also demonstrate a medical source's knowledge and understanding of the claimant's impairments. *Id.* § 404.1520c(c)(3)(i)-(v). In addition, a medical source's familiarity with other evidence in a claim may make the medical source's opinion more persuasive. *Id.* § 404.1520c(c)(5).

**A. Evidence Concerning Plaintiff's Impairments and Symptoms**

Plaintiff testified that she has been unable to work since July 1, 2012, as a result of a combination of injuries and illnesses that converged in that time period: she was suffering from "extraordinary fatigue"; she experienced significant weight gain and alterations to her lymphatic and endocrine systems after undergoing high-dose steroid treatment for severe respiratory issues; and her weight gain exacerbated pain from existing spinal issues. (AR 118.) Plaintiff further testified that in 2012 she suffered migraine headaches two to three times per week and her ability to focus had degenerated as a result of her fatigue and endocrine issues. (AR 132-33, 137.)

Dr. Herbst—a board-certified endocrinologist "internationally known in the areas of lipedema and Dercum disease" (AR 1242)—began treating Plaintiff in 2017 (*see* AR 144, 592-95, 1079-1094, 1242-44, 1246-1249). Plaintiff testified that she provided Dr. Herbst with her medical records dating back to 1990, that she sees Dr. Herbst every 3-6 months, and that she communicates with Dr. Herbst via phone and email several times per month. (AR 144-45.) Dr. Herbst opined that Plaintiff suffers from a number of conditions—including lumbar, cervical, respiratory, and endocrine conditions, as well as chronic fatigue syndrome—that render her unable to perform full-time work, and that

these "limitations have been ongoing since 2010 when she underwent high-dose steroid treatment." (AR 1093-94; *see also* AR 592-95, 1242-44.) Specifically, Dr. Herbst opined that Plaintiff suffers from chronic pain and migraines as a result of injuries related to a 1990 vehicle accident followed by a failed fusion and laminectomy, and a 1998 vehicular assault. (AR 592-93.) In addition, Plaintiff was diagnosed with chronic fatigue syndrome in 2010 and the condition has persisted since. (AR 593.) Furthermore, Plaintiff developed respiratory problems after being exposed to toxic particulates during the 9/11 attack in New York City; she underwent high-dose steroid treatment for the respiratory issues in 2010 and, afterward, she developed weight gain and endocrine/lymphatic problems, including Dercum's disease, lipedema, and lymphedema. (*Id.*; *see also* AR 1093-94.) Plaintiff's "ability to manage her time, show up for meetings, reliably schedule phone calls, focus on her work, and meet deadlines" deteriorated "severely since 2010 when Chronic Fatigue Syndrome, lymphedema, and Dercum's Disease began adding multiplying effects to her disability." (AR 595.) Dr. Herbst opined that Plaintiff has, since 2010, been unable to sustain full-time work as a result of her "persistent fatigue and pain." (AR 1094.)

Dr. Avina—a board-certified family medicine physician and one of three certified September 11th providers in Arizona—examined Plaintiff and reviewed her medical records dating from 2002 onward, after the World Trade Center National Health Program referred Plaintiff to her. (AR 1250.) Dr. Avina opined that Plaintiff "has been unable to perform [] regular, full-time work . . . since 2009." (AR 1254). Specifically, Dr. Avina opined that Plaintiff began suffering from reactive airway disease, asthma, and related respiratory and pulmonary issues within weeks of her exposure to particulates during the 9/11 attack, and that by 2009 she was suffering from "recurrent infections and debilitating chronic fatigue." (AR 1251.) She was placed on high-dose steroids in 2010 after losing her voice for several months; afterward, she gained weight and her chronic fatigue worsened. (*Id.*) Plaintiff spent most of 2011-2012 "under medical treatment for respiratory, pulmonary, sleep, and chronic fatigue issues, as well as pain and weakness."

(*Id.*) Dr. Avina opined that, although Plaintiff attempted to work and attend school "well past the time that she was physically capable of doing so," a close look at Plaintiff's records reveals that Plaintiff "was severely impaired in her ability to do any regular, sustained work or home activity from at least 2009 onward." (AR 1251; *see also* AR 1254.)

Dr. Rivero—a board-certified internal medicine physician—testified as the medical expert at Plaintiff's January 31, 2019 hearing before the ALJ. (AR 95-105.) Dr. Rivero testified that, as of December 2012, Plaintiff had a variety of conditions including chronic fatigue syndrome, post laminectomy syndrome, migraine headaches, sinusitis, and obesity, which caused physical work-related limitations and also caused Plaintiff to be off-task over ten percent of the time. (AR 96-105.) Vocational expert Robin Generaux testified that a person cannot sustain work if she is off-task more than ten percent of the workday. (AR 111.)

Plaintiff submitted voluminous medical records documenting her impairments and her attempts to seek medical care for those impairments, including records related to her 1990 lumbar spine injury (AR 662-65, 924-932), her chronic respiratory issues and "severe[,] debilitating fatigue" (AR 708; *see also, e.g.*, AR 666-749, 816-71, 952-65), and her 2010 high-dose steroid treatment (AR 701, 733, 845). The records include letters from 2011 in which Dr. Richard Schubert opined that Plaintiff began suffering from chronic fatigue syndrome in 2009 and that by 2011 her fatigue was significantly limiting her daily activities and ability to exercise. (AR 841, 845-47.) The records also include physical therapy notes from 2011 documenting that Plaintiff reported difficulty walking over 100 meters, sitting over 30 minutes, and ascending or descending stairs. (AR 966-69.)

**B. The ALJ's Rejection of the Opinion of Dr. Herbst**

The ALJ agreed with Dr. Herbst that Plaintiff is unable to sustain work activities on a regular and continuing basis but found that "the medical evidence does not support that this was the case going back to 2009-2010 as Dr. Herbst has indicated." (AR 54.)

The R&R finds that the ALJ properly considered Dr. Herbst's treating relationship and expertise and properly rejected Dr. Herbst's opinion of disability going back to 2009-2010 on the grounds that the opinion was not supported by the record evidence. (Doc. 19 at 17-18.) In so finding, the R&R notes that, in 2012, Plaintiff "traveled extensively for work and her respiratory conditions were mild and, as with other conditions, they improved with treatment." (*Id.* at 17.) The Court declines to adopt this portion of the R&R.

Given Dr. Herbst's specialization and her treating relationship with Plaintiff, Dr. Herbst's opinion was entitled to increased weight under the factors listed in 20 C.F.R. § 404.1520c(c); *see also Revels*, 874 F.3d at 654 ("A doctor's specialty is especially relevant with respect to diseases that are 'poorly understood' within the rest of the medical community.").[3] While it is true, as the R&R finds, that the ALJ noted Dr. Herbst had treated Plaintiff, there is no indication that the ALJ assigned greater weight to Dr. Herbst's opinion as a result of her relationship with Plaintiff and her specialization in endocrine/lymphatic issues.

Furthermore, the ALJ did not explain why or how the record evidence undermined Dr. Herbst's opinion. (AR 50-54.) The impairments and complaints of pain and fatigue that form the basis of Dr. Herbst's opinion are well documented in Plaintiff's voluminous medical records, and Dr. Herbst's opinion is consistent not only with Plaintiff's testimony but also with the opinions of Drs. Avina and Rivero. Instead of recognizing these consistencies, the ALJ selectively summarized portions of Plaintiff's medical records and

---

[3] The Court notes that there is an inconsistency in the R&R's finding that the ALJ committed no error in analyzing Dr. Herbst's opinion but committed reversible errors in analyzing the opinions of Drs. Rivero and Avina. The ALJ rejected the opinions of all three physicians on the grounds that they were not supported by and/or inconsistent with the medical evidence. The ALJ provided additional, alternative reasons for rejecting the opinions of Drs. Rivero and Avina, but inconsistency with the medical evidence was the sole reason that the ALJ provided for rejecting the opinion of Dr. Herbst. If, as the R&R finds, inconsistency with the medical evidence was alone a sufficient reason for rejecting the opinion of treating specialist Dr. Herbst, then it necessarily would also have been a sufficient reason for rejecting the similar opinions of non-treating physicians Drs. Rivero and Avina, and any errors in the ALJ's alternative reasons for rejecting the opinions of Drs. Rivero and Avina would be harmless.

then stated:

> In sum, . . . [Plaintiff] had been evaluated by several specialists for a myriad of complaints and yet no obvious explanation has been found for her alleged symptoms. A claimant's statements alone may not be the sole basis for conclusions regarding disability; objective medical evidence must support a claim. The burden of proof to establish medical evidence showing disability rests with the claimant. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the individual's statement of symptoms. In the instant claim, prior to November 2, 2017, this evidence is lacking.

(AR 53 (internal citations omitted).)

Although the ALJ's reasoning is less than clear, it appears from the above-quoted passage that the ALJ rejected Plaintiff's testimony and the consistent opinions of Drs. Herbst, Avina, and Rivero on the grounds that objective medical evidence did not support the alleged intensity and debilitating effects of Plaintiff's symptoms as of her date last insured. It is true that "objective medical evidence from an acceptable medical source" must show that a claimant has a medical impairment or impairments that "could reasonably be expected to produce" the claimant's alleged pain or other symptoms, 20 C.F.R. § 404.1529(a), but here the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms." (AR 49.) The ALJ's issue was not with the existence of Plaintiff's impairments but, rather, with the intensity and persistence of Plaintiff's pain and other symptoms. But once a claimant has shown that she has a medically determinable impairment or impairments that could reasonably be expected to produce her pain or other symptoms, her "statements about the intensity and persistence" of her pain or other symptoms cannot be rejected "solely because the available objective medical evidence does not substantiate" them. 20 C.F.R. § 404.1529(c)(2). Accordingly, the ALJ erred by relying on a lack of substantiating objective medical evidence in rejecting Plaintiff's testimony concerning the intensity and persistence of her pain and other symptoms.

The ALJ also erred to the extent she faulted Drs. Herbst, Avina, and Rivero for relying on Plaintiff's statements and the self-reported symptoms documented in Plaintiff's medical records. "A patient's report of complaints, or history, is an essential

diagnostic tool." *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003). A physician's reliance on a patient's statement of symptoms "hardly undermines [the physician's] opinion as to [the patient's] functional limitations." *Id.* This is particularly true for diseases, such as chronic fatigue syndrome, that elude objective measurements. *Cf id.* (discussing fibromyalgia); *see also Reddick v. Chater*, 157 F.3d 715, 725-26 (9th Cir. 1998) (discussing chronic fatigue syndrome). Because chronic fatigue syndrome is diagnosed based on self-reported fatigue, the ALJ erred to the extent she rejected Dr. Herbst's, Avina's, and Rivero's opinions concerning the effects of Plaintiff's chronic fatigue syndrome "on the premise that they were based on the subjective complaints" of Plaintiff. *Reddick*, 157 F.3d at 725. Furthermore, the ALJ's statement that an obvious explanation for Plaintiff's symptoms had not been found despite numerous consultations with specialists merely supports Plaintiff's diagnosis of chronic fatigue syndrome, as the final diagnosis of chronic fatigue syndrome "is made 'by exclusion,' or ruling out other possible illnesses." *Id.* at 726.

In light of Dr. Herbst's treating relationship with Plaintiff; her specialization in endocrine/lymphatic issues; her knowledge of Plaintiff's medical records; and the consistency of her opinion not only with those records but also with Plaintiff's testimony and the opinions of Drs. Avina and Rivero, the ALJ's rejection of Dr. Herbst's opinion is not supported by substantial evidence.

**C. The ALJ's Rejection of the Opinion of Dr. Avina**

The ALJ rejected Dr. Avina's opinion because (1) it was inconsistent with the medical evidence and Plaintiff's alleged onset date; (2) Dr. Avina's review of the evidence was limited to conditions she determined were related to 9/11; and (3) Dr. Avina did not examine Plaintiff until October 2018. (AR 54.) The R&R finds that the ALJ properly discounted Dr. Avina's opinion on the grounds that it was inconsistent with Plaintiff's alleged disability onset date. (Doc. 19 at 12.) However, the R&R finds that the ALJ erred by failing to properly consider Dr. Avina's expertise, by assigning reduced weight to Dr. Avina's opinion because it was retrospective, and by assigning reduced

weight to the opinion on the grounds that it was limited to conditions Dr. Avina determined were related to 9/11. (*Id.* at 11-12.)

For the same reasons discussed above, substantial evidence does not support the ALJ's conclusion that Dr. Avina's opinion is inconsistent with the medical evidence. Furthermore, the ALJ committed additional errors in the alternative reasons she cited for rejecting Dr. Avina's opinion. First, as the Commissioner concedes, the ALJ erred in discounting Dr. Avina's opinion on the ground that Dr. Avina's review of the evidence was limited to conditions she determined were related to 9/11. (Doc. 20 at 3 n.2.) Second, there is no indication that the ALJ gave greater weight to Dr. Avina's opinion as that of a specialist "about medical issues related to . . . her area of specialty." 20 C.F.R. § 404.1520c(c)(4).

Third, the Court disagrees with the R&R that the ALJ properly gave reduced weight to Dr. Avina's opinion on the grounds that it was inconsistent with Plaintiff's alleged disability onset date. (*See* Doc. 19 at 12.) The Court does not find it proper to construe Plaintiff's alleged disability onset date as an express admission that Plaintiff was capable of sustaining full time work prior to that date. Furthermore, Dr. Avina explained the basis of her conclusion that Plaintiff lacked the capacity to sustain full-time work even prior to her alleged disability onset date: Plaintiff psychologically denied the extent of her limitations and attempted to continue working "well past the time that she was physically capable of doing so." (AR 1251.)

Finally, the Court agrees with the R&R that the ALJ erred in giving reduced weight to the opinion of Dr. Avina on the grounds that she had not examined Plaintiff until October 2018. "[M]edical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1998). Here, the ALJ did not provide any other legally sufficient reasons for rejecting Dr. Avina's opinion, and the retrospective nature of the opinion cannot alone support the ALJ's decision.

. . . .

**D. The ALJ's Rejection of the Off-Task Opinion of Dr. Rivero**

The ALJ found that the testimony of Dr. Rivero was "generally consistent with the evidence," but she rejected Dr. Rivero's off-task testimony on the grounds that it was not supported by the medical evidence or Plaintiff's activities, and it was unclear whether the testimony pertained to the period before December 31, 2012. (AR 49.) The R&R finds that the ALJ misstated Dr. Rivero's off-task testimony, that any lack of clarity in the testimony resulted from the ALJ's failure to develop the testimony, and that the ALJ failed to cite activities that would not allow Abramson to be off task over ten percent of the time. (Doc. 19 at 15-16.)

For the reasons discussed above, substantial evidence does not support the ALJ's conclusion that Dr. Rivero's off-task testimony is not supported by the medical evidence. In addition, as the R&R notes (Doc. 19 at 15) and the Commissioner concedes (Doc. 20 at 5), the ALJ inaccurately described Dr. Rivero as having testified that Plaintiff "may" be off task over ten percent of the time, when Dr. Rivero actually testified that Plaintiff "would" be off task over ten percent of the time (*see* AR 49, 105). The Court also agrees with the R&R that, if Dr. Rivero's off-task testimony was unclear, any lack of clarity resulted from the ALJ's failure to sufficiently develop the testimony. (Doc. 19 at 15.) However, the Court does not agree that the testimony was unclear. The ALJ asked Dr. Rivero if Plaintiff had any work-related restrictions as of December 2012; Dr. Rivero responded by listing a number of restrictions and then stating that Plaintiff would be off task over ten percent of the time "during that time period as well." (AR 103-105.) The off-task testimony unambiguously appears to relate to the time period before December 2012.

Finally, the Court agrees with the R&R that the ALJ erred in finding that Dr. Rivero's off-task testimony was inconsistent with Plaintiff's activities. (Doc. 19 at 15-16.) Shortly before rejecting the off-task testimony, the ALJ noted that Plaintiff "continued to run a company in some fashion well after her alleged onset date." (AR 49.) But due to the ALJ's failure to make a conclusive step one determination, it is unclear

whether, or how much, Plaintiff worked after her alleged onset date. The vocational expert's testimony supports a finding that a person who is off task over ten percent of the time cannot perform sustained full-time work (AR 111), but the record does not support a finding that Plaintiff needed to perform sustained full-time work in order to run her company "in some fashion," nor is there evidence that Plaintiff could not run her company "in some fashion" if she were off task over ten percent of the time. The ALJ also noted that Plaintiff engaged in "extensive travel" after her alleged onset date (AR 49), but the record does not contain any evidence to support a finding that a person who is off task over ten percent of the time cannot travel. The ALJ's references to Plaintiff's work and travel activities do not support the ALJ's rejection of Dr. Rivero's off-task testimony.

**E. Step One Determination**

As the R&R finds (Doc. 19 at 12-13), the ALJ erred by failing to make a conclusive step one determination; the ALJ committed this error even after being expressly directed by the Appeals Counsel to determine any periods of time in which Plaintiff was working at the level of substantial gainful activity (AR 190). Nevertheless, both parties ask the Court to reject the portion of the R&R recommending remand for a conclusive step one determination. The Commissioner argues that any error in the ALJ's failure to render a conclusive step one determination was harmless because "by not finding that Plaintiff engaged in substantial gainful activity, the ALJ resolved step one in her favor . . . ." (Doc. 20 at 8.) Plaintiff agrees that remand for re-adjudication of step one is unnecessary, urging the Court to treat the Commissioner's argument as a concession that the ALJ resolved step one in Plaintiff's favor. (Doc. 21 at 9-10.)

The Social Security Act allows for the award of disability benefits only if the claimant is disabled, meaning, as relevant here, unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 423(a)(1)(E). Because the first step of the five-step sequential evaluation process is "mandated by law," it "cannot be bypassed

without a conclusive determination." *Merendino v. Comm'r of Soc. Sec.*, No. 15-3900(NLH), 2016 WL 3041849, at *5-6 (D.N.J. May 27, 2016). The Court declines Plaintiff's invitation to transform the ALJ's failure to render a conclusive step one determination into a conclusive determination in Plaintiff's favor. The lack of a conclusive step one determination is an outstanding issue that must be resolved before a proper disability determination can be made in this case.

**IT IS ORDERED** that the Report and Recommendation (Doc. 19) is **partially accepted and partially rejected**, as discussed above.

**IT IS FURTHER ORDERED** that the Commissioner's Objection (Doc. 20) is **overruled**.

**IT IS FURTHER ORDERED** that the final decision of the Commissioner is **reversed**, and this case is **remanded** to the agency for a further determination of whether benefits are due, including a conclusive step one determination and re-evaluation of the opinions of Drs. Herbst, Rivero, and Avina.

Dated this 30th day of November, 2020.

Honorable Rosemary Márquez
United States District Judge